Robert W. SHELTON et ux *v.* Luster C. SMITH et al

5-4361                                     421 S. W. 2d 348

Opinion delivered December 11, 1967

*Jones & Stratton,* for appellants.

*Clark, Clark & Clark,* for appellees.

J. Fred Jones, Justice. Appellants purchased a plot of ground on Lake Conway in Faulkner County and placed a house trailer on it. Appellees, as property owners in the same area, filed a complaint in the Faulkner County Chancery Court alleging that appellants are in

violation of restrictive covenants pertaining to the use of the land, and they seek the removal of the trailer and an injunction against its continued use.

The chancellor ordered the removal of the trailer and granted the injunction. On appeal to this court, appellants rely on the following points for reversal:

"1. The trial court erred in admitting testimony over appellants' objection relating to conversation had between appellees and B. H. George, deceased.

"2. The trial court erred in impressing an implied negative covenant upon lands belonging to appellants."

In their original complaint, the appellees alleged violation of a restrictive covenant in a bill of assurance, and by amendment to the complaint pleaded "reciprocal negative easement" in support of the alleged application of the covenant to the appellants and their land. The findings of the chancellor, as set forth in his letter to the attorneys in announcing his decision and directing the preparation of precedent for decree, indicate that the removal was ordered and injunction granted on proof of the allegations in the original complaint, as well as the amendment to the complaint. We conclude that the findings of the chancellor are not against the preponderance of the evidence, and that the evidence submitted in support of the original complaint is sufficient to sustain the decree.

The facts of this case are as follows: B. H. George and wife owned an 80-acre tract of land consisting of two adjoining forties described as SE¼ of the NE¼ of Section 20, and the SW¼ of the NW¼, section 21 in Township 4 North, Range 13 West in Faulkner County. A considerable portion of this 80-acre tract was taken by the state and inundated by Lake Conway. In 1951, Mr. and Mrs. George filed in the recorder's office a plat and

bill of assurance. The pertinent provisions of the bill of assurance are as follows:

"KNOW ALL MEN BY THESE PRESENTS: That the undersigned, being the owners of lands located within Faulkner County, Arkansas, as follows:

"SE¼ NE¼ Section 20, and SW¼ NW¼ Section 21, all in T4N, R13W, *which they have subdivided into lots and parcels under the name of B. H. George Subdivision,* creating Lots 1 through 13, in 'Lake View Circle' and Lots 1 through 24 in 'Shore Line Drive' all as shown upon a plan thereof heretofore filed for record in the office of the Circuit Clerk and Recorder for Faulkner County, Arkansas, the same being of record in Plat Book 'A', at page 152, do hereby make and file this Bill of Assurance in respect to said Subdivision, and henceforth it shall be a good and sufficient description of any lot or parcel therein to describe the same by reference to the Plat thereof in any deed, mortgage or other instrument conveying or affecting title to said land.

"The following restrictions affecting building upon and usage of the property which is the subject of this Bill of Assurance shall be in effect for a period of 25 years from and after the date thereof;

"(a)   No Trailer, tent, shack, hut or similar shelter or structure shall be placed or erected upon any lot or parcel of land within said subdivision whether the same be intended for temporary use and occupancy or otherwise." (Emphasis supplied).

Subparagraphs (b), (c) and (d) restrict the buildings as to property lines on the lots and parcels, restrict the use to residential purposes and set a minimum construction standard for houses to be erected. Subparagraph (e) provides for sewage disposal and then provides as follows:

"*There restrictions are for the benefit of the present and future owners of lots within said subdivision and are intended to establish and preserve uniform and desirable building and usage standards and maintain an appearance which will be in keeping with the purposes for which the development of the subdivision is intended.* These restrictions shall be in the nature of covenants and every conveyance of any *lot or parcel* shall be subject thereto. And if any person shall violate or attempt to violate, or shall fail to perform or observe any of the foregoing restrictions, requirements, or conditions, it shall be lawful for any other person or persons owning a lot in said subdivision which is subject to the same restrictions, condition, or requirement in respect to which the violation or attempted violation occurs, to institute appropriate proceedings, either at law or equity, for the violation so done or attempted.

"In Witness Whereof, we have set our hands this 10 day of February, 1951, and caused the execution of this Bill of Assurance to be duly acknowledged that it may be made of record." (Emphasis supplied).

A county road runs east and west through the 80 acre tract, and the main body of Lake Conway, insofar as it relates to the problem here, lies south of the county road. A direct fill was erected along the lake shore across the south end of a low area extending from the county road to Lake Conway, thus forming a small lake extending from the county road to the main body of Lake Conway and separated from the main body of Lake Conway by the dirt fill or dam. This small lake was designated "Minnow Lake" and is included in the plat filed with the bill of assurance.

A street designated "Lake View Circle" was laid out from the county road near the center of the platted

area and extends south along the west side of Minnow Lake and then west along the north shore of Lake Conway, curving back north and intersecting the county road again near the northwest corner of the platted area. Thirteen lots were laid out and platted fronting on Lake View Circle. Another street designated "Shore Line Drive" was laid out from the county road 345 feet east of Lake View Circle. This street extends south along the east side of Minnow Lake and then east along the north shore of Lake Conway, curving back north and intersecting the county road again near the northeast corner of the platted area. Twenty-four lots were laid out and platted fronting on Shore Line Drive. The area platted "Minnow Lake" is approximately 345 feet in width between Lake View Circle and Shore Line Drive and extends in length from the county road south to Lake Conway.

The plat is designated "B. H. George Subdivision," and after filing the plat and bill of assurance, Mr. George sold the numbered lots in the plat to appellees and others. The deeds contain the phrases, "according to the plat," and "subject to all restrictions affecting the property." After appellees purchased their lots, Mr. and Mrs. George sold all of the 80 acre tract, except the lots shown on plat of B. H. George Subdivision and other specifically excepted areas, to Ralph P. Royse and Bernice W. Royse, his wife. The land thus conveyed included the area designated "Minnow Lake," which was included within the plat, but which was not designated as a lot on the plat.

The water level was lowered in Minnow Lake and in May 1967, Mr. and Mrs. Royse sold a part of the area designated on the plat as "Minnow Lake" to the appellants, Mr. and Mrs. Shelton. The deed to the appellants described the land conveyed by metes and bounds and consisted of an irregular area with the east 105 feet fronting on Shore Line Drive (referred to in the deed as a county road), the north 97 feet fronting on Minnow Lake and the south 125 feet fronting on Lake

Conway. Appellants' property is immediately across Shore Line Drive from appellee Smith's lots and fronts the Smith lots on Shore Line Drive. Appellants' property is between the Smith lots on Shore Line Drive and Minnow Lake and Lake Conway. It is also between appellees' lots on Shore Line Drive and appellees' lots on Lake View Circle.

Appellants placed a house trailer on their land and the question presented here is whether appellants' land comes within the restrictions of the covenant contained in the bill of assurance. We are of the opinion that the chancellor was correct in holding that it does.

There is no question at all that the restrictive covenants applied to all the *numbered lots* platted on each side of Minnow Lake. There is no question that Minnow Lake is inside and near the middle of the platted area filed for record as "B. H. George Subdivision." There is no question that appellees purchased their lots subject to the restrictive covenants contained in the bill of assurance and recited in their deeds. We are of the opinion that there is no question that the parcel of land purchased by appellants comes within subparagraph (a) of the bill of assurance providing that

"No trailer . . . shall be placed or erected upon any lot *or parcel of land* within said subdivision whether the same be intended for temporary use and occupancy or otherwise." (Emphasis supplied).

We conclude that Minnow Lake between the two areas platted into numbered lots within the B. H. George Subdivision was not released from the restrictions of the covenant by lowering the dam and releasing the water from Minnow Lake or by filling it in, and we are of the opinion that appellees were entitled to the enforcement of this covenant in the bill of assurance.

Appellants do not question the rights of B. H. George to place the restrictive covenants on the land in the B. H. George Subdivision, and they do not question

that Mr. George followed the proper procedure in doing so by plat and bill of assurance properly filed. Appellants simply contend that the restrictive covenant in the bill of assurance does not apply to appellants' land.

In the deeds of conveyance of lots to the appellees on both sides of the plot subsequently purchased by appellants, B. H. George referred to the plat filed with the bill of assurance and the restrictions in the use of the property. We conclude that appellants' land was included in the express terms of the covenant and was subject to the restrictions.

In 20 Am. Jur. 2d, Covenants, Conditions, Etc., § 307, p. 871, we find the following statement:

"The notice of restrictions sufficient to charge a purchaser may be actual notice or notice of facts sufficient to put him on inquiry. For instance, the notice sufficient to charge a purchaser of a lot in a subdivision with knowledge of restrictions imposed in deeds to other lots as part of a general plan, but inadvertently or otherwise omitted from the deeds in his chain of title, may be actual or constructive, including notice of facts which ought to have put him on inquiry, such as the uniform appearance of the area in which the lot is located. Thus, the uniform appearance of a particular tract, and the nature of the buildings thereon, have been considered sufficient to charge a purchaser of a lot in the tract with notice of a general plan of restrictions, or at least sufficient to put him on inquiry as to whether there was a general plan."

The chancellor apparently viewed the land, as well as heard the evidence in this case, and even in the absence of the testimony relating to conversations with B. H. George, we are of the opinion that the chancellor's findings that appellants' land is subject to the restric-

tions contained in the covenant are not against the preponderance of the evidence in this case.

We conclude that appellants' land is a "parcel" of land clearly included within the subdivision and the plat, and since we have decided that the appellants' land is subject to the express restrictions in the bill of assurance, it is unnecessary to consider either the admissibility of B. H. George's testimony or the implied negative covenants—those matters being immaterial to the disposition of the case.

The decree of the chancellor is affirmed.